IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Kenneth Lee Huckabee, | ) | C/A No. 8:14-cv-03503-MGL-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Chip Stevenson, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on motions to include facts not in state record and for evidentiary hearing filed by Petitioner [Docs. 2, 3] and a motion for summary judgment filed by Respondent [Doc. 36]. Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on August 26, 2014.[1] [Doc. 1.] Along with his Petition, Petitioner filed a motion to include facts not in state court record and a motion for evidentiary hearing. [Docs. 2, 3.] On January 12, 2015, Respondent filed responses in opposition to Petitioner's motions to include facts not in state record and for evidentiary hearing [Docs. 38, 39] and a motion for summary judgment and a return and memorandum to the Petition [Docs. 36, 37]. On January 13, 2015, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on August 26, 2014. [Doc. 1-2 (envelope stamped as received by the prison mail room on August 26, 2014).]

summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 41.] On May 20, 2015, Petitioner's response in opposition to Respondent's motion was entered on the docket. [Doc. 50.] Respondent filed a reply on June 1, 2015 [Doc. 54], and Petitioner filed a sur reply on June 18, 2015 [Doc. 55].

Having carefully considered the parties' submissions and the record in this case, the Court recommends Petitioner's motions to include facts not in state record and for evidentiary hearing be denied, Respondent's motion for summary judgment be granted, and the Petition be denied.

## BACKGROUND

Petitioner is presently confined in the South Carolina Department of Corrections at Broad River Correctional Institution pursuant to orders of commitment of the Spartanburg County Clerk of Court. [Doc. 1.] In October 2007, Petitioner was indicted for assault with intent to kill and murder. [App. 656–59.[2]] On March 4, 2008, represented by N. Douglas Brannon ("Brannon") and Shawn M. Campbell ("Campbell"), Petitioner proceeded to trial. [App. 1–457.] Petitioner was found guilty on the lesser included offenses of assault of a high and aggravated nature and voluntary manslaughter [App. 448–49] and sentenced to ten years for the conviction of assault of a high and aggravated nature and thirty years for the conviction of voluntary manslaughter, to run concurrent [App. 455–56].

---

[2]The Appendix can be found at Docket Entry Numbers 37-1 through 37-4.

2

**Direct Appeal**

Lanelle C. Durant, Appellate Defender with the South Carolina Commission on Indigent Defense, filed a brief on Petitioner's behalf, dated May 26, 2009. [Doc. 37-5.] The brief raised the following issues:

>    1.    Did the trial court err in allowing the state's primary witness/victim to testify in reply which was a violation of the sequestration order because the witness/victim remained in the court room during appellant's testimony and her reply testimony was prejudicial because it went to appellant's defense of self defense?
>
>    2.    Did the trial court err in not instructing the jury that the sale of crack by appellant was irrelevant to their decision when it appeared that the jury was relating the sale of crack to the fault element in self defense?

[*Id.* at 4.] On June 9, 2010, the South Carolina Court of Appeals affirmed the conviction. [App. 458–65.] Petitioner filed a petition for rehearing, dated June 24, 2010 [Doc. 37-7], which was denied on July 20, 2010 [Doc. 37-9]. Petitioner filed a petition for writ of certiorari in the Supreme Court of South Carolina, dated August 19, 2010. [Doc. 37-10.] The petition raised the following questions:

>    1.    Whether the Court of Appeals erred by finding that the trial court was correct in not instructing the jury that the sale of crack by petitioner was irrelevant to their decision when it appeared that the jury was equating the sale of crack ot the fault in bringing on the difficulty?
>
>    2.    Whether the Court of Appeals erred by finding that the trial court was correct in allowing the state's primary witness/victim to testify in reply which was a violation fo the sequestration order because the witness/victim remained in the court room during petitioner's testimony and her reply testimony was prejudicial because it refuted petitioner's defense of self defense?

3

[*Id.* at 4.]  The Supreme Court of South Carolina denied the petition on January 20, 2011.[3]

[Doc. 37-12.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on October 15, 2010, while his direct appeal was pending.  [App. 466–71.]  Petitioner raised the following grounds for relief, quoted substantially verbatim:

(a)     Prosecutorial Misconduct

(b)     Ineffective Assistance of Counsel

(c)     Newly Discover[e]d Evidence

(d)     Ineffective assistance of appellate couns[e]l

(e)     Juror Misconduct

[App. 468.]  In support of his grounds for relief, Petitioner provided the following facts, quoted substantially verbatim:

Issues will be pled w/PCR Counsel in specific legal briefing. (see attached pro se issues[4])  If any more argu[]ment arise they will be amended.

[App. 468 (footnote added).]

---

[3]Although Respondent states the South Carolina Court of Appeals issued remittitur on January 25, 2011, and cites to Respondent's attachment 10 [Doc. 37 at 3], attachment 10 is actually the petition for writ of certiorari in Petitioner's post-conviction relief appeal [Doc. 37-13].  The record before this Court does not include the remittitur from Petitioner's direct appeal.

[4]The record before this Court does not appear to include any attachments to Petitioner's 2010 PCR application.

Petitioner, proceeding pro se, filed a second PCR application on March 8, 2011. [App. 472–80.] Petitioner raised the following grounds for relief, quoted substantially verbatim:

(a)  ineffective assistance of counsel

(b)  After discovered evidence

(c)  Prosecutorial misconduct

[App. 474.] In support of his grounds for relief, Petitioner provided the following facts, quoted substantially verbatim:

(a)  Attorney failed to object to a few things during trial

(b)  Found out some juror misconduct after trial.

(c)  Prosecutor stepped out of bounds with several comments and ques[tions]

[App. 474.]

Petitioner's two PCR applications were subsequently merged and the 2011 PCR application was considered an amendment to the 2010 PCR application. [App. 481–82.] On November 30, 2011, Petitioner, represented by Max T. Hyde, Jr. ("Hyde"), filed an amended PCR application, raising the following grounds for relief:

1.  Petitioner hereby alleges that it was a violation of Miranda for an officer to testify in regards to a statement Petitioner gave in response to a question the officer had asked Petitioner when Petitioner had not been read his Miranda rights. Petitioner's statement was highly prejudicial and heavily relied upon.

2.  The prosecutor elicited testimony and made comments during closing arguments as the fact that Petitioner remained silent and exercises his constitutional right to remain silent and his privilege against self-incrimination.

5

> Petitioner's attorney at trial failed to object to such
> violation of Petitioner's constitutional rights.

[App. 483.] Attached to the amended PCR application were a handwritten amendment and a typed brief. [App. 484–536.] The following issues were raised in the handwritten amendment:

> (A)   Applicant was deprived of a fair trial due to prosecutor's introductio[n] of applicants past arrest silence and refusal to write a voluntary written statement. Prosecutor commented during closing argu[]ments o[n] applicants post arrest refusal to write a statement and refusal to talk to Detective. Prosecutor spoke in closing argu[]ments on facts not in evidence or record. Prosecutor made statements in argu[]ments whic[h] misstated evidence and testimony. Solicitor deprived applicant due process. Applicant was highly prejudiced and his constitutional rights were violated due to his rights guaranteed by the United States Constitutio[n] and South Carolina Laws. Const. Amend. 5 and 14.

> (B)   Applicant was deprived of a fair trial due to ineffective assista[nce] of counsel due to counsel failing to object to the questioning of Investigator of applicants post arrest silence refusal to write a volun[tary] statement as well as failing to object to prosecutors closing argu[]m[ent] on post arrest silence and missstating evidence and testimony. Coun[sel] failed to object to blank statement form being admitted into evidence.

[App. 485.] The following issues were raised in the typed brief:

> 1)   Trial counsel was ineffective for failing to object and move for mistrial or request curative instruction when prosecutor violated Applicants constitutional rights due to questions of Applicants refusal to write a statement which constituted clear infringement of Applicants Fifth and Fourteenth Amendment privileges against self-incrimination and right to remain silent. Constitutional Amendments 5 and 14.

> 2)   Trial counsel was ineffective for failing to object and move for mistrial or request curative instruction when

6

prosecutor violated Applicants Constitutional rights due to comments during closing arguments of Applicants refusal to write a statement and post-arrest silence which constituted a clear infringement of Applicants Fifth and Fourteenth Amendment privileges against self-incrimination and right to remain silent.

3)    Counsel was ineffective for failing to object to prosecutors closing arguments when the prosecutor spoke of evidence not adduced at trial or in the record. The comments were prejudicial.

4)    Trial judge committed error in admitting inadmissible testimony of Officer Greene in the state's case in Chief that was clearly a miranda violation.

5)    Counsel was ineffective for violating Applicants Constitutional rights against privileges of self-incrimination due to questions and comments of Applicants refusal to write a voluntary statement. Constitutional Amendment 5 and 14.

6)    Overall view of Ineffective Assistance of Counsel.

[App. 492–93.]

On December 15, 2011, Petitioner, represented by Hyde, filed a second amended

PCR application and handwritten memorandum, raising the following issue:

1.    Petitioner hereby alleges a Doyle violation in connection with the cross-examination of Applicant during the jury trial. Specifically, Applicant's trial counsel was ineffective in failing to object to the cross-examination of Applicant when the prosecutor questioned Applicant as to why the Applicant did not tell officers at the Sheriff's Office the address of Applicant or where Applicant lived when Applicant was in custody, thereby focusing the jury's attention on Applicant's silence and attacking Applicant's credibility. Such Doyle violation is in violation of the Fifth Amendment and Fourteenth Amendment of the United States Constitution. Please see attached as **Exhibit A** Applicant's argument in support of this amendment to Applicant's Application for Post-Conviction Relief.

7

[App. 537–42 (emphasis in original).]

On February 2, 2012, Petitioner, represented by Hyde, filed a third amended PCR application, raising the following issues:

> 1. Applicant hereby alleges his trial counsel was ineffective for opening the door for the State of South Carolina/prosecution to speak on Applicant's post arrest silence in closing arguments. Applicant's trial counsel said in his closing arguments that Applicant made it clear that Applicant was not writing anything down which would open the door for the prosecutor to talk about Applicant's refusal to write a statement.
>
> 2. Applicant hereby alleges his trial counsel was ineffective for opening the door for the State of South Carolina/prosecution to speak or otherwise enter evidence not in the record during closing arguments by doing so first.
>
> 3. Further, Applicant hereby amends his argument number four (4) on page four (4) of his brief that has been filed in this Court from Trial Judge committing error to: "Counsel was ineffective in failing to suppress inadmissible testimony of Officer Greene in the State's case in chief that was clearly a <u>Miranda</u> violation."

[App. 543–44.] The State filed a return, dated July 15, 2011. [App. 545–52.]

An evidentiary hearing was held on March 9, 2012, at which Petitioner was represented by Hyde. [App. 553–634.] On May 18, 2012, the PCR court filed an order denying and dismissing the PCR application with prejudice. [App. 635–46.] On June 4, 2012, Petitioner filed a motion for reconsideration pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. [App. 648–49.] The State filed a return, dated June 22, 2012. [App. 650–53.] On June 29, 2012, the PCR court filed an order amending the previously filed order of dismissal with respect to one issue but otherwise denying the motion for reconsideration. [App. 654–55.]

8

David Alexander ("Alexander") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari in the Supreme Court of South Carolina. [Doc. 37-13.] The petition asserted the following as the issues presented:

1.

Whether trial counsel was ineffective in derogation of petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments by failing to object to the solicitor's comments on petitioner's post-arrest silence?

2.

Whether petitioner should be granted a new trial because the solicitor committed misconduct, violating petitioner's Fourteenth Amendment rights, by commenting on petitioner's post-arrest silence and commenting on facts not in evidence during his closing argument?

[*Id.* at 3.] The Supreme Court of South Carolina denied the petition on July 11, 2014 [Doc. 37-15] and remitted the matter to the lower court on July 29, 2014 [Doc. 37-16].

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on August 26, 2014. [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

**GROUND ONE:** Trial counsel was ineffective in derogation of Petitioner[']s 5th, 6th, and 14th amendments by failing to object to testimony, evidence, and prosecutor[']s comments on Petitioner[']s invocation of his constitutional rights against self incrimination and post arrest silence.

*Supporting facts*: During trial the solicitor called witness Karim Hudani who read to the jury a letter Petitioner wrote him which contained the sentence "I did not write a statement." Trial counsel failed to ask the letter be redacted to remove Petitioner[']s reference to his assertion of his

9

5th amendment right not to write a statement. Trial counsel failed to object to the letter and the blank voluntary statement petitioner refused to write being admitted into evidence to remove Petitioner[']s assertions of constitutional rights. Prosecutor questioned investigator Bryant of why Petitioner refused to write a statement and tied it to Petitioner[']s guilt on direct and redirect of Bryant. The prosecutor[']s questions to investigator Bryant was the second time the state introduced Petitioner[']s invocation of his right not to incriminate himself to the jury during the testimony of the State[']s witness Investigator Bryant. Bryant testified he interrogated Petitioner on the day Petitioner was arrested which was the next day after the shooting. The State moved to enter into evidence the preinterrogation waiver form that Petitioner signed stating that he understood his rights. However this preinterrogation waiver form was actually a preinterrogation waiver/voluntary statement form. The top was filled out and signed showing Petitioner was advised of his rights but the bottom part of the form provided space for a voluntary statement in which Petitioner left blank and refused to write a statement that would have been used as evidence against him at trial by the state. Trial counsel failed to object to the blank voluntary statement being admitted into evidence and ask it be redacted to remove Petitioner[']s assertion to his invocation of his Fifth amendment right not to write a statement. The Prosecutor then questioned on direct of Bryant on the fact that Petitioner refused to write a statement. The Prosecutor questioned Bryant:

> Q - Did you take a written statement from [Petitioner]?
> A - No, sire, I did not.
> Q - Why not?
> A - He didn'[t] want to moralize his statement in writing.
> Q - Did he tell you why not?
> A - He said he didn't want to put anything on paper.

Bryant then tied Petitioner[']s refusal to write a statement to his guilt by testifying Petitioner advised him he was guilty and wanted to plead. At the time of interrogation Petitioner was not even charge with murder in which he was on trial for. The prosecutor

then brought Petitioner[']s guilt to the attention of the jury again on redirect which consisted of one single question which was:

> Q - Briefly. Did [Petitioner] tell you he was guilty?
> A - Yes, sir.

This is the prosecutor[']s second introduction of Petitioner[']s guilt to the jury following the showing that Petitioner refused to write a statement which was Petitioner[']s right guaranteed by the Fifth Amendment. Trial counsel failed to object allowing the state to violate Petitioner[']s constitutional rights. The state then for the forth time introduced to the jury the fact that Petitioner refused to write a statement during closing argu[]ments in a highly prejudicial way. The prosecutor argued referring to Petitioner;

> "I[']m not putting anything on paper. And you know why? Because this wasn't his first run-in. **He knows not to put anything on paper. In his mind don[']t write anything down, it can[']t be used against you later, because since 1999 to 2007, he's been in and out of jail. He knows the system. He knows how it works. He "refused" to talk to Detective Taylor**, but he told Detective Bryant his version of events, that Ms. Tavenier had a gun, she shot at him, he shot back in self defense. **I shot him and I want to plead guilty. I shot him and I want to plead guilty**." Emphasis added.

The prosecutor again following Petitioner[']s invocation of his Fifth Amendment rights brings Petitioner[']s guilt to the attention of the jury. Trial counsel failed to object. Petitioner does not argue the showing to the jury of what Petitioner said to police but argues error in showing the Jury what Petitioner did not do. Trial counsel **failed** to object. Petitioner[']s verbal statement to police was consistent with his trial testimony in this self defense case where Petitioner[']s whole case rested on his credibility and counsel[']s failure to object allowed the prosecutor to draw an inference of guilt from Petitioner[']s invocation of his rights. Petitioner did talk to Bryant but the prosecutor testified to the jury that Petitioner refused to talk to Detective Taylor which was

11

the lead investigator and did not testify at Petitioner[']s trial and was not even in the record which will be discussed in ground two of this Petition.  The prosecutor committed misconduct in presenting evidence, soliciting testimony, and arguing in closing argu[]ments as to Petitioner[']s invocation of constitutional rights not to write a statement and right to remain silent.  Because of Petitioner[']s case being a high credibility case, Petitioner was prejudiced by trial counsel[']s failure to object.  Had trial counsel objected and requested a curative instruction to the jury, there's a reasonable probability that the outcome would have been different.  It[']s evidenced that the jury considered self defense by their questions during deliberations.  This proves the jury did not believe this to be an open-and-shut case of murder.  Error which substantially damages Petitioner[']s credibility cannot be held harmless where that credibility is essential to his defense.  Petitioner[']s credibility was critical to his defense and the guilt was not overwhelming.  Trial counsel[']s failure to object prejudiced Petitioner

**GROUND TWO:**     Trial counsel failed to object to prosecutor[']s misconduct when prosecutor violated Petitioner[']s 14th Amendment rights and 5th Amendment rights by commenting on Petitioner[']s post arrest silence as well as facts not in evidence during his closing argu[]ments therefore being ineffective.

*Supporting facts*:     Trial counsel failed to object to prosecutor[']s closing argu[]ment when prosecutor told jury Petitioner refused to talk to Detective Taylor which violated Petitioner[']s 5th and 14th amendments rights as well as tied it to Petitioner[']s guilt that was not in the record.  Trial counsel failed to object to the prosecutor[']s closing argu[]ment when prosecutor told jury Petitioner had no job or income which was not in the record.  Trial counsel failed to object to prosecutor[']s commentary during closing argu[]ment that Petitioner[']s trial counse[l] had said Petitioner kept firing once the truck was leaving which was not in the record.  The prosecutor extensively attacked Petitioner[']s defense and credibility with these false mis[s]tatements to mislead the jury.

**GROUND THREE:**  Trial counsel was ineffective in failing to challenge the state['s] destruction of exculpatory evidence depriving Petitioner of his right to due process.  Const. Amen. 5 and 6.

*Supporting facts:*  In Petitioner['s] trial Petitioner testified in self defense that as he approached a truck to sell some crack, the female driver Tavenier pulled a gun and tried to rob Petitioner then shot at him from inside the truck.  Petitioner ended up on the ground and fired back in self defense killing the passenger Bridwell.  At the time of arrest the day after the shooting Petitioner told the police the same thing as he testified.  Investigator Bryant testified Petitioner told him this.  The lead investigator told his officer "**NOT**" to test of the interior of the truck for GSR.  Trial counsel failed to attack the state for a due process violation due to the fact that the state failed to preserve the truck for examination by the defense to establish Petitioner['s] defense of self defense.  The truck was exculpatory to Petitioner because has Petitioner been able to examine the truck and hire ind[e]pendent expert to test the truck, it would have proved Petitoner['s] defense of self defense by proving the driver Tavenier shot at Petitioner from inside the truck.  There were also bullet holes on the interior passenger side door that were exculpatory to Petitioner.  Trial counsel at PCR testified the truck had been released by the time he was retained.  The state never even confer[r]ed with Petitioner to see if he wanted to test the truck.  Much evidence from the state came from the truck.  The preservation of the truck could have proved Petitioner['s] innocence.  A GSR expert from sled testified the truck could have been tested for GSR.  Yet the lead investigator chose specifically NOT to test for GSR and then destroyed the evidence without even giving the defense a chance to examine and investigate the truck.  At the time Petitioner told police Tavenier shot at him from the truck, the truck was still in their custody and they discarded Petitioner['s] claims and destroyed any evidence exculpatory from the truck that Petitioner could have used to prove his defense.  Trial counsel failed to challenge the state['s] destruction of exculpatory evidence in favor of Petitioner in violation of Fight Amendment due process.  The destroyed evidence was used against Petitioner "<u>EXTENSIVELY</u>"

in closing argu[]ments by the state to disprove Petitioner[']s defense of self defense and credibility. Trial counsel was ineffective and had Petitioner[']s trial counsel challenged the destruction of evidence there[']s a reasonable probability that the outcome would have been different because the indictments should have been dismissed.  There was absolutely no valuable evidence for the state from the truck "except" the missing evidence of GSR and the hole that trial counsel could have used to prove Petitioner[']s self defense had the evidence not been destroyed or had it been preserved.  Petitioner didn[']t even rec[ei]ve an adverse inference charge for the lost evidence.

**GROUND FOUR:**     Trial counsel was ineffective in failing to adequately investigate and hire independent expert to test projectile to further prove Petitioner[']s defense of self defense and impeach state[']s witness.

*Supporting facts:*     Petitioner told police the day after the shooting upon arrest that the female driver Tavenier shot into the ground with a chrome revolver.  Investigator Bryant testified in trial that Petitioner told him this.  Police found a projectile in the road that went to Petitioner[']s claim at arrest and trial testimony.  Tavenier claimed at trial that Petitioner shot into the road.  Trial counsel failed to impeach the witness when he had documents to do so. Petitioner claimed from day one that Tavenier shot in the ground.  Trial counsel failed to investigate and hire independent expert to test the bullet to prove Petitioner[']s defense and impeach state witness.

**GROUND FIVE:**     Trial counsel was ineffective in failing to re-examine and conduct appropriate analysis of all other forensic and physical evidence.

*Supporting facts:*     As set forth in grounds three and four, there was GSR evidence as well as a bullet found on the crime scene. Trial counsel failed to do <u>any</u> independent investigation and aggressively re-examine the state[']s gunshot residue report.  Trial counsel failed to produce any GSR defense.  Trial counsel failed to even interview the state[']s potential expert GSR witness as evidenced in his closing argu[]ment that he'd never even talk to or met Illa Simmons before the day she testified and had

no idea what she was going to testify. [Petitioner] claimed from day one that as he approached a truck a female driver Tavenier shot at him in an attempted robbery and [Petitioner] shot back killing the passenger claiming self defense. Police tested Tavenier for GSR two hours after [Petitioner] told police Tavenier had shot at him and found one of the metals of GSR on Tavenier[']s right back hand. However the state[']s expert testified the lead which is one of the metals of GSR was not GSR. Illa Simmons, the expert further testified she could not rule out the possibility Tavenier had fired a gun and that if Tavenier had fired a gun and the gunshot had been removed, she would rec[ei]ve the quantitics she received here but still ruled no GSR was found. The state capitalized expensively in argu[]ments on the absence of GSR evidence. Trial counsel failed to hire independent expert to re-examine the state[']s expert witness in order to establish a GSR defense. The GSR eviden[c]e was critical to [Petitioner's] defense. Trial counsel also failed to test the bullet in the road which is ground four of this petition. Trial counsel abandoned his duty to ag[g]ressively re-examine the state[']s forensic evidence and [Petitioner] was prejudiced. Had trial counsel re-examined the state[']s GSR evidence and presented a GSR defense there is a reasonable probability the outcome of the trial would have been different.

[Doc. 1 at 5–15 (emphases in original).] As stated, along with his Petition, Petitioner filed motions to include facts not in state record and for evidentiary hearing [Docs. 2, 3], to which Respondent filed responses in opposition on January 12, 2015 [Docs. 38, 39]. Also on January 12, 2015, Respondent filed a motion for summary judgment. [Doc. 36.] Petitioner filed a response in opposition on May 20, 2015 [Doc. 50]; Respondent filed a reply on June 1, 2015 [Doc. 54]; and Petiitoner filed a sur reply on June 18, 2015 [Doc. 55]. Accordingly, the motions are ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When

determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

17

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and

"even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)    (I) there is an absence of available State corrective process; or

19

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.  State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a

procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged

constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533

(quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to

comply with state procedural requirements and cannot make the required showing of cause

and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the

court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is

precluded by state rules from returning to state court to raise the issue, he has procedurally

bypassed his opportunity for relief in the state courts and in federal court. *Coleman v.

Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual

prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87.

In such an instance, the exhaustion requirement is technically met, and the rules of

procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d

at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v.

Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937

(4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider

claims that have not been presented to the South Carolina Supreme Court in limited

circumstances—where a petitioner shows sufficient cause for failure to raise the claim and

actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a

"fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.  A

petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating

23

to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent contends Grounds Three, Four, and Five are procedurally barred and a portion of Grounds One and Two are procedurally barred. [Doc. 37.] Respondent further argues Petitioner cannot overcome the default of these grounds because he cannot establish cause and prejudice or a miscarriage of justice. [*Id.*] Petitioner argues he can establish cause for some procedurally barred claims under *Martinez v. Ryan*, — U.S. —, 132 S.Ct. 1309 (2012), because PCR counsel was ineffective. [Doc. 50.] The Court agrees that these grounds are procedurally barred.

***Ground One***[6]

The  portion of Ground One related to the admission of the letter and testimony about the letter is procedurally barred.  Petitioner alleges that his co-defendant read a letter to the jury in which Petitioner had written, "I did not write a statement," and trial counsel failed to ask that the letter be redacted to remove any reference to Petitioner's assertion of his Fifth Amendment right not to write a statement.  [Doc. 1 at 5.]  The PCR court's order of dismissal does not mention the letter.  [*See* App. 635–46.]  Additionally, Petitioner failed to include this allegation in his Rule 59(e) motion to preserve it for appeal; therefore, it is procedurally barred from federal habeas review, *see Marlar*, 375 S.C. 407, 653 S.E.2d 266, absent a showing of cause and actual prejudice.

---

[6]Respondent addresses Grounds One and Two together in his memorandum in support of the motion for summary judgment.  [Doc. 37 at 14–19.]  In his response, Petitioner argues these grounds are separate and distinct and "are uniquely based on their distinct factual underpinnings and the applicable body of federal legal analysis required to determine their resolutions."  [Doc. 50 at 5.]  Petitioner appears to clarify that in Ground One, he is raising a claim of ineffective assistance of counsel for failure to object to the admission of a letter and a blank statement at trial and to the related testimony about the letter and blank statement [Doc. 50 at 5–9], and in Ground Two, he is raising a claim of ineffective assistance of counsel for failing to object to the prosecutor's comments regarding Petitioner's post-arrest silence, to the prosecutor's comments on facts not in evidence, and to the prosecutor's attributing testimony to Petitioner that Petitioner did not make [*id.* at 9–11].  The only portion of these claims Respondent argues is procedurally defaulted is that portion alleging ineffective assistance of counsel for failure to object to Petitioner's co-defendant's testimony about the letter and the admission of the letter. [Doc. 37 at 14.]  Accordingly, the Court addresses only that portion of Ground One in this procedural bar analysis.

### *Grounds Three, Four, and Five*

Grounds Three, Four, and Five are procedurally barred because they were not presented to the Supreme Court of South Carolina in Petitioner's petition for writ of certiorari. [*See* Doc. 37-13.] Because these grounds were not fairly presented to the Supreme Court of South Carolina, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### *Cause and Prejudice*

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488. *But see Martinez*, 132 S. Ct. at 1315 ("Inadequate assistance of counsel at *initial-review* collateral proceedings *may* establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (emphasis added)).

Here, Petitioner does not argue that he can establish cause to overcome the procedural bar of the portion of Ground One regarding trial counsel's failure to object to the admission of the letter; therefore, that portion of Ground One is procedurally barred from consideration by a federal habeas court and should be dismissed.  However, Petitioner argues that he can establish cause and prejudice for the procedural default of Grounds Three, Four, and Five under *Martinez* because PCR counsel was ineffective for failing to raise these issues.  [Doc. 50 at 11–16.]

26

In *Martinez*, the Supreme Court elaborated,

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. Accordingly, Petitioner may establish cause for the default of these grounds if he demonstrates that (1) his PCR counsel was ineffective and (2) the underlying ineffective assistance of trial counsel claim is a substantial one, i.e., it has some merit. However, the Court in *Martinez* did not extend its holding to PCR appellate counsel, but only counsel in initial review collateral proceedings. *See e.g.*, *Crowe v. Cartledge*, C/A No. 9:13–cv–2391 DCN, 2014 WL 2990493 at *6 (D.S.C. July 2, 2014) ("[I]neffective assistance of PCR appellate counsel is not cause for a default."); *Cross v. Stevenson*, Civil Action No. 1:11–cv–02874-RBH, 2013 WL 1207067 at *3 (D.S.C. Mar. 25, 2013) ("*Martinez*, however, does not hold that the ineffective assistance of counsel in a PCR appeal establishes cause for a procedural default."). Therefore, because the procedural default of Grounds Three, Four, and Five occurred at the PCR appeal in that they were not raised in the petition for writ of certiorari, Petitioner may not rely on *Martinez* to establish cause with respect to these grounds. Accordingly, these claims are procedurally barred from consideration by a federal habeas court and should be dismissed.

27

**Merits of Remaining Grounds**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state

28

court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to

or an unreasonable application of Supreme Court precedent unless applicable Supreme

Court precedent exists; without applicable Supreme Court precedent, there is no habeas

relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart*

*v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597

(7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### *Ground One*[7]

In Ground One, Petitioner argues his trial counsel was ineffective for failing to object

to a blank statement being introduced at trial and to testimony about the blank statement.

When evaluating a habeas petition based on a claim of ineffective assistance of counsel,

assuming the state court applied the correct legal standard—the Supreme Court's holdings

in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the

state court's application of the *Strickland* standard was unreasonable. This is different

from asking whether defense counsel's performance fell below *Strickland*'s standard."[8]

---

[7]Because the Court has already found that a portion of Ground One—alleging ineffective assistance of counsel for failure to object to Petitioner's co-defendant's testimony about a letter and the admission of the letter—is procedurally barred, the Court addresses only that portion of Ground One alleging ineffective assistance of counsel for failure to object to a blank statement being introduced at trial.

[8]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within

*Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court evaluated trial counsel's performance under the standard set forth in *Strickland*. [App. 637–41, 645.] The PCR court found,

> The Applicant alleged that Counsel was ineffective for failing to object to the Solicitor's commentary regarding Applicant's refusal to write a written statement. The Applicant testified that he did talk with police about what happened and signed a form stating that he understood his rights, but refused to write his statement down. Applicant testified that because he refused to write the statement down, Counsel should have objected when Applicant was asked about his refusal to write the statement down. This Court finds that there is no merit to this ground or any assertion that Counsel was deficient in failing to object to this testimony due to Applicant's belief that this constituted post-arrest silence. The Applicant first gave an oral statement to police, therefore he was not silent and the Solicitor's commentary was not objectionable. Therefore, this Court finds that this claim should be denied and dismissed.

---

the wide range of reasonable professional assistance." *Id.* at 689.

[App. 638–39.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. At the hearing, trial counsel testified as follows:

> Q.       Some questions – I guess just in general, he's – the Applicant has alleged that the prosecutor committed what he considered to be a *Doyle* violation. There should have been numerous objections to that.
>        In your experience practicing, do you – did you observe during the trial or in reviewing that anything that you considered to be a *Doyle* violation?
> A.       No, because what *Doyle* says is that, if a defendant gives no statement, that the – the State is then barred from bring up the fact that there was no statement. In this case, [Petitioner], he talked immediately.
>        There was a statement. The only thing that there wasn't in this case was a written statement. So, *Doyle* is not on point.

[App. 612:15–613:3.]  It cannot be said that the PCR court unreasonably applied the *Strickland* standard. The courts that have addressed similar failure to memorialize issues are divided. *Compare Strickland v. Lee*, 471 F.Supp.2d 557, 623 (W.D.N.C. 2007) (finding

that when a petitioner indicated that he did not want to provide a written statement of the information he had told police, it was not an invocation of his right to silence); *State v. Parks*, 294 Kan. 785, 280 P.3d 766 (Kan. 2012) ("[A] defendant's refusal to memorialize his or her statement in a particular form is not equivalent to an invocation of the right to silence implicating *Doyle*."); *Crosby v. State*, 366 Md. 518, 784 A.2d 1102, 1108–09 (Md. 2001) (finding testimony that a defendant "refus[ed] to put into writing that which had already been spoken" was not a violation of the write to remain silent); *with United States v. Jenkins*, 499 F.Supp.2d 1268, 1276 (M.D. Fla. 2007) ("To be sure, there is a distinction here in that defendant did not invoke a right to discontinue making verbal statements. Rather, he declined to memorialize his verbal statements in a sworn written statement. However, this is not a distinction which diminishes [defendant's] *Doyle* position."); *Arnold v. Runnels*, 421 F.3d 859, 864 (9th Cir. 2005) (noting that a defendant can "invoke [ ] his *Miranda* rights selectively, with respect to a tape-recorded interrogation").   Therefore, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground One.

### *Ground Two*

In Ground Two, Petitioner argues trial counsel was ineffective for failing to object to the prosecutor's comments during closing argument regarding Petitioner's post-arrest silence, to the prosecutor's comments on facts not in evidence, and to the prosecutor's attributing testimony to Petitioner that Petitioner did not make.[9]  [Docs. 1 at 9–10; 50 at

---

[9]The Court is not convinced Ground Two is not procedurally barred because, in the petition for writ of certiorari, the allegations regarding the solicitor's comments were raised

9–11.]  The PCR court evaluated trial counsel's performance under the standard set forth

in *Strickland*.  [App. 637–41, 645.]  The PCR court found,

> The Applicant also alleged that Counsel was ineffective
> for failing to object to the Solicitor's closing argument.  Counsel
> testified that he did not find any comments made by the
> Solicitor during closing to be objectionable.  Counsel testified
> that the evidence that the Applicant had at one time worked at
> Ryan's was in the record, but his past unemployment and
> concerns over money were also in the record.  Additionally,
> Counsel testified that he prefers not to object during opposing
> counsel's closing arguments unless the alleged improper
> comments made are particularly egregious.  This Court finds
> that the Solicitor's comments regarding whether or not the
> Applicant was working or why he needed money were a fair
> commentary of evidence in the record.  (*See* Transcript pp.
> 303–4, 349–50).  Furthermore, the Solicitor's comments as to
> the Applicant's apprehension by trickery were also a fair
> commentary of the evidence in the record.  (*See* transcript p.
> 339).   The remaining statements by the Solicitor were fair
> commentary on the State's theory of the case from the facts
> presented.  Accordingly, Counsel was not ineffective for failing
> to object to these comments or arguments.  Therefore, this
> claim is denied and dismissed.

[App. 639–40.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither

contrary to nor an unreasonable application of applicable Supreme Court precedent.  First,

the PCR court applied the *Strickland* standard, which is the applicable Supreme Court

precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts

that were materially indistinguishable from those considered in a decision of the Supreme

Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court

---

as a claim of prosecutorial misconduct and not as ineffective assistance of counsel claims.
[Doc. 37-13 at 12–13.]  However, because procedural default is an affirmative defense that
is waived if not raised by respondents, *Gray*, 518 U.S. at 165–66, the Court addresses the
merits of this ground.

concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. Trial counsel testified at the PCR hearing that he did not see any reason to object to the solicitor's closing argument and explained his strategic decision of not objecting during opening or closing statements unless they are terribly egregious. [App. 613–14, 620.] Petitioner has not shown the PCR court's determination of this issue was contrary to, or an unreasonable application of, clearly established federal law. *See United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) ("Under the first prong of *Strickland*, we apply a strong presumption that trial counsel's strategy and tactics fall within the wide range of reasonable professional assistance."); *see also McCarver v. Lee*, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, [the court] must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance."); *Curry v. Warden*, No. 6:07-2933-HFF-WMC, 2008 WL 3887648, at *11 (D.S.C. Aug. 21, 2008) (finding the petitioner was not entitled to habeas relief on a claim of ineffective assistance of counsel for failure to object to the prosecutor's statement in closing argument where, inter alia, counsel testified as to his strategic reasons for not objecting). Consequently, Petitioner is not entitled to habeas corpus relief based on Ground Two.

**Additional Grounds**

In his response in opposition to the motion for summary judgment, Petitioner asserts that he raised seven, rather than five, grounds in his Petition [Doc. 50 at 3–5], and Petitioner includes his own affidavit, wherein he avers the Petition filed in this Court is "not

a true and authentic duplication of [his] original submitted 2254 federal habeas corpus petition that [he] signed and submitted for mailing to the U.S. District Court through the South Carolina Department of Corrections' wing officer and the Broad River Prison mailroom personnel" [Doc. 50-1 at 1–2].  Petitioner also attaches what he alleges is a true and authentic copy of his originally submitted federal habeas petition, which includes the following additional grounds:

> **GROUND SIX:** Did the trial court err in allowing the state[']s primary witness/victim to testify in reply which was a violation of the sequestration order because the witness/victim remained in the courtroom during Appellant[']s testimony and her reply testimony was prejudicial because it went to Appellant[']s defense of self defense.

> **GROUND SEVEN:** Did the trial court err in not instructing the jury that the sale of crack by Appellant was irrelevant to their decision when it appeared that the jury was relating the sale of crack to the fault element in self defense.

[Doc. 50-1 at 19–24.]

A copy of the Petition that was filed in this Court was attached to the Order authorizing service of process in this case, and these documents were filed and mailed to Petitioner on September 10, 2014.  [Doc. 13.]  Petitioner's Grounds Six and Seven were not included in the copy of the Petition mailed to Petitioner with the Order authorizing service of process.  [*See* Docs. 1; 13-1.]  These grounds were not, therefore, addressed by Respondent in the motion for summary judgment.  Petitioner did not inform the Court that the Petition filed in this Court is not a true and authentic duplication of what he submitted for mailing until he submitted his response in opposition to the motion for summary judgment to the prison mailroom on May 18, 2015 [Doc. 50-3] and has offered no explanation for his failure to inform the Court of any discrepancies between what he

35

submitted and what was filed for over eight months. Additionally, Petitioner has not filed a motion to amend his Petition to include these grounds that have not been filed in this Court. Accordingly, these grounds for relief are not properly before this Court, *see Johnson v. McCall*, C/A No. 4:08-3840-CMC-TER, 2010 WL 960335, at *1 (D.S.C. Mar. 12, 2010) (finding that a ground allegedly raised in the petitioner's § 2254 petition but not included in the filed petition was not properly before the court), and the undersigned declines to address these grounds.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED. In light of the Court's recommendation, Petitioner's motion to include facts not in state record and motion for evidentiary hearing should be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 17, 2015
Greenville, South Carolina